SSS:ELM
F. #2018R00690

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ONE SAMSUNG PHONE WITH IMEI 0891688969076775, CURRENTLY LOCATED IN THE EASTERN DISTRICT OF NEW YORK | APPLICATION FOR A SEARCH WARRANT FOR AN ELECTRONIC DEVICE <br><br> 18-MJ-711 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, TENITRIS MCINNIS, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been for approximately three years. Prior to becoming a Special Agent with the ATF, I was a police officer with the Tallahassee Police Department for more than seven years. During the past 10 years, I have personally participated in numerous investigations and arrests, the debriefing of cooperating witnesses and informants, and the execution of numerous search warrants, including search warrants for electronic devices. As a result of my training and experience, I am familiar with the techniques and methods of operation used by

individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities.

3.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.      The property to be searched is a SAMSUNG cellphone with IMEI number 0891688969076775, hereinafter the "Device." The Device is currently in the possession of the ATF in the Eastern District of New York.

5.      There is probable cause to believe that WARREN FLEMING has committed and is committing violations of federal criminal law, including being a felon in possession of a firearm and ammunition, in violation of Title 18, United States Code, Section 922(g), possession of crack cocaine with intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1), and possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c). There is also probable cause to search the Device described in Attachment A for evidence, instrumentalities, contraband and/or fruits of these crimes in further described in Attachment B.

## PROBABLE CAUSE

6.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that WARREN FLEMING and others known and unknown have committed and are committing violations of federal criminal law, including the unlawful possession of a firearm by a prohibited person, in violation of Title 18, United States Code, Section 922, possession with intent to distribute crack cocaine, in violation of Title 21, United States Code, Section 841 and possession of a firearm in furtherance of a

drug trafficking crime, in violation of Title 21, United States Code, Section 924(c) (the "Subject Offenses"). There is also probable cause to search the Device described in Attachment A for evidence, instrumentalities, contraband and/or fruits of these crimes further described in Attachment B.

## I.   THE DEFENDANT'S APRIL 4, 2018 ARREST

7.     On March 31, 2018, the mother of WARREN FLEMING's two younger children (the "Victim") reported that she and FLEMING had had a verbal fight. When the Victim refused to let FLEMING into her home, he became incensed and broke the windows out of her front door. FLEMING also repeatedly texted the victim, including one message that stated: "I'm going to kill you." As a result of FLEMING's conduct, the New York City Police Department (the "NYPD") issued a perpetrator investigation card concerning the defendant that same day (the "ICard"), which indicated that there was probable cause to arrest FLEMING on charges of aggravated harassment in the second degree, in violation of NYPL 240.30(04), a Class A misdemeanor.

8.     On April 4, 2018, NYPD officers arrested WARREN FLEMING near his apartment located on Osborn Street in Brooklyn, New York (the "Building"). During the afternoon hours of April 4, 2018, four NYPD officers were on patrol in plainclothes and an unmarked car in the vicinity of the Building. As the patrol car approached the Building, Officer One observed a man – WARREN FLEMING – who generally matched the description on the ICard riding a bicycle toward the Building.

9.     Officer One pulled the car over so it was pointing toward the Building's entrance. Meanwhile, WARREN FLEMING had reached the Building's entrance and gotten off of his bike. When the car stopped, FLEMING looked over at the car, and Officer One

was able to get a clear view of his face. Officer One recognized the defendant as the subject

of the ICard and of his investigation, and said, in sum and substance that that was him.

10.     All four officers got out of the car and walked toward the defendant. As the

officers approached, WARREN FLEMING dropped his bike and unsuccessfully attempted to

get into the Building. The officer who was seated in the rear, passenger-side seat of the car

("Officer Two") reached FLEMING first. FLEMING put up his hands as Officer Two

approached, but his left hand began to move toward his waist as Officer Two came closer.

Officer Two grasped FLEMING's wrist to stop his hand from moving further, and the

defendant stated, "I have a gun on me."

11.     The other three officers arrived at the entrance of the Building. Officer Two

maintained his grip on WARREN FLEMING's left wrist, while another officer ("Officer

Three") retrieved a gun – specifically, a loaded .380-caliber Bursa 85 semiautomatic pistol

(the "Pistol") from the left side of FLEMING's waistband. Officer One searched FLEMING

on the spot, and discovered 12 packets of crack cocaine (specifically, one ziplock bag and 11

twists), a cell phone and $392 in United States currency in FLEMING's pockets. Based on

my training and experience, the possession of $392 in cash, a loaded revolver and 12

individual packets of crack cocaine is consistent with drug trafficking activity.

12.     At some point during this interaction WARREN FLEMING said, "I pissed

myself because I'm going to jail." He had urinated. FLEMING went on to say that he found

the Pistol near the chicken spot and was going to bring it to an NYPD Detective with the 73rd

precinct.

13.     Ultimately, the officers did not arrest WARREN FLEMING in connection with

the aggravated harassment charge.

14.    During a <u>Mirandized</u>, post-arrest interview, WARREN FLEMING denied ever owning or possessing a firearm but later acknowledged having been arrested previously for possessing a firearm. FLEMING admitted that he used crack cocaine recreationally but denied ever selling drugs.

15.    Since April 5, 2018, WARREN FLEMING has been detained at the Metropolitan Detention Center in Brooklyn, New York, in connection with the April 4, 2018 arrest. On April 6, 2018, during a recorded telephone conversation with an individual whom FLEMING identified as his sister in Bureau of Prisons paperwork, FLEMING asked where his phone was, stating, "I only had one phone on me." He then instructed his sister to "cut the [phone] with the black case off." She confirmed that the phone with the black case was already off. Based on my training and experience, I know that individuals engaged in drug trafficking frequently use multiple phones to engage in their drug trafficking activity to evade detection by law enforcement officers.

16.    On April 18, 2018, a grand jury sitting in the Eastern District of New York returned a three-count indictment charging WARREN FLEMING with possession of cocaine base with intent to distribute, in violation of Title 21, United States Code, Section 841(a), possession of a firearm during a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c), and being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g).

II.    CRIMINAL HISTORY

17.    On January 5, 1993, WARREN FLEMING was convicted of criminal possession of a firearm and criminal possession of cocaine, both Class D felonies, in Kings County Criminal Court. On May 3, 1993, FLEMING was convicted of criminal possession of a loaded firearm, a

Class D felony, in Kings County Criminal Court. On May 6, 1993, FLEMING was convicted of attempted robbery, a Class D felony, in Kings County Criminal Court. On March 22, 1997, FLEMING was convicted of murder in aid of racketeering in the United States District Court for the Eastern District of North Carolina.

III.   THE DEVICE

18.   Based on my training and experience, I believe that a review of the information stored on the Device, including text messages sent or received by WARREN FLEMING, voice memos made by FLEMING, voice messages received by FLEMING, social media posts and messages sent or received by FLEMING, and photos taken, sent or received by FLEMING will identify the individuals with whom FLEMING was communicating prior to his arrest on April 4, 2018, and their means and methods of communication. The Device may also contain photographs of FLEMING surrounding the April 4, 2018 discovery of the Pistol and ammunition on his person.

19.   Additionally, based on my training and experience, I believe that a review of the information stored on the Device, including messages sent or received by WARREN FLEMING, social media posts and messages sent or received by FLEMING, and photos sent or received by FLEMING, will reveal photographs of FLEMING with the Pistol and ammunition or narcotics he possessed on April 4, 2018, photographs of FLEMING in the clothing he was wearing on April 4, 2018, and messages that explain why FLEMING was in possession of crack cocaine and the Pistol, including his familiarity with firearms and narcotics and his association with individuals involved in the distribution of crack cocaine.

20.   The Device is currently in the lawful possession of the ATF. It was seized incident to the defendant's arrest. Therefore, while the ATF may already have all necessary

authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

21.    The Device is currently in the possession of the ATF in the Eastern District of New York. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the ATF.

## TECHNICAL TERMS

22.    Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also

include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another

location. These devices can contain records of the addresses or locations involved in such navigation. The GPS consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

23. Based on my training, experience, and research, I know that those who are engaged in the distribution of a controlled substance often communicate with others to plan and execute the distribution by means of wireless telephone (including by means of text messages, electronic mail and social media messages), and record the contact information of criminal associates in the "contacts" section of such telephones. Those who commit such offenses may retain evidence of their participation in such offenses on wireless telephones through call records, text messages, WhatsApp messages, Facebook messages, Instagram messages, e-mails or photos.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

24.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

25.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that may expose many parts of the device to human inspection to determine whether it is evidence described by the warrant.

26.     *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

27.     I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of the Device described in Attachment A to seek the items described

in Attachment B.

Respectfully submitted,

Tenitris McInnis
Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Subscribed and sworn to before me
On Au

THE HONORABLE MARILYN D. GO
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## ATTACHMENT A

The property to be searched is a SAMSUNG cell phone with IMEI number 0891688969076775, hereinafter the "Device."  The Device is currently in the possession of the ATF in the Eastern District of New York.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

1

## ATTACHMENT B

1.    All records on the Device described in Attachment A that relate to violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. §§ 922(g) and 924(c), and involve WARREN FLEMING since March 1, 2018, including:

    a.    any information related to the possession of firearms or ammunition by WARREN FLEMING;

    b.    lists or contact information for individuals dealing in firearms or ammunition, and related identifying information;

    c.    types, amounts, and process of firearms and ammunition purchased as well as dates, places, and amounts of specific transactions;

    d.    lists of drug customers and related identifying information;

    e.    types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    f.    any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    g.    any information recording WARREN FLEMING's schedule or travel from March 1, 2018, until April 4, 2018;

    h.    all bank records, checks, credit card bills, account information, and other financial records.

2.    Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

1

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.